ROBERT E. WASHBURN, PLAINTIFF v. YADKIN VALLEY BANK AND TRUST
COMPANY, DEFENDANT

JOSEPH E. ELLER, PLAINTIFF v. YADKIN VALLEY BANK AND TRUST COMPANY,
DEFENDANT

No. COA07-612
No. COA07-613

(Filed 6 May 2008)

**1. Pleadings— judgment on—prior orders not attached—collateral estoppel and law of the case not applicable**

Where prior orders were not attached to the pleadings and it cannot be concluded that the trial court considered those orders, collateral estoppel and law of the case were not considered in an appeal from judgment on the pleadings.

**2. Judgments— on the pleadings—issues of fact not material or admitted—only questions of law remaining**

In a judgment on the pleadings in an employment matter, only questions of law concerning contractual obligations and statutory issues remained where all material allegations were admitted in the pleadings, the "disputed issue of fact" which defendant pointed toward was not material, and defendant filed its own motions for judgment on the pleadings.

**3. Employer and Employee— noncompetition agreements— not binding**

Plaintiffs were not bound by noncompetition provisions where the plain, unequivocal and clear terms of the employment agreements (drafted by defendant) gave plaintiffs the discretion to declare their employment terminated following a corporate merger, plaintiffs exercised their discretion and complied with all of the requirements of the agreements, and the noncompetition provisions specifically and unequivocally stated that they did not apply prospectively if plaintiffs exercised their discretion in declaring their employment terminated without cause.

**4. Employer and Employee— Wage and Hour Act—severance pay after merger**

Plaintiffs were entitled to judgment on the pleadings on their wage and hour claims in a dispute that arose over payment after they left their corporate employment following a merger. The

WASHBURN v. YADKIN VALLEY BANK & TR. CO.

[190 N.C. App. 315 (2008)]

Wage and Hour Act provides that employees whose employment is terminated shall be paid all wages due, the Act specifically includes severance pay, and the disputed payments in this case constitute severance pay.

**5. Judgments— on the pleadings—affirmative defenses**

The trial judge did not err by granting judgment on the pleadings for plaintiffs on defendant's affirmative defenses where none of those defenses barred plaintiffs' recovery.

**6. Employer and Employee— employment departure after merger—counterclaims—judgment on the pleadings**

The trial court properly granted judgment on the pleadings on counterclaims for breach of contract, tortious interference with contractual relations, and unfair competition arising from plaintiffs' departure from their employment after a corporate merger. The noncompetition provisions did not apply prospectively, so that there was no breach of the agreement and interference with the agreement could not have happened, and even if plaintiffs were bound by the provisions, a mere breach of contract is not sufficient for an unfair or deceptive trade practice action.

**7. Trade Secrets— misappropriation—allegations not sufficiently specific**

The trial court did not err by granting plaintiffs' Rule 12(b)(6) motions to dismiss counterclaims for misappropriation of trade secrets arising from plaintiffs' departure from their employment following a corporate merger. Defendant's allegations did not sufficiently specify the trade secrets or the acts by which the alleged misappropriations were accomplished.

Appeal by Defendant from orders entered 6 February 2007 by Judge J. Marlene Hyatt in Watauga County Superior Court. Heard in the Court of Appeals 26 November 2007.

*Hagan Davis Mangum Barrett Langley & Hale PLLC, by Stuart C. Gauffreau and D. Beth Langley, for Plaintiffs-Appellees.*

*Williams Mullen Maupin Taylor, by Michael C. Lord and Heather E. Bridgers, for Defendant-Appellant.*

STEPHENS, Judge.

Plaintiffs Robert E. Washburn ("Washburn") and Joseph E. Eller ("Eller") (collectively, "Plaintiffs") initiated separate actions seeking

damages and declaratory relief upon allegations that Defendant Yadkin Valley Bank and Trust Company ("Yadkin") breached provisions of Plaintiffs' employment agreements. Yadkin denied the allegations and counterclaimed. The trial court: (1) granted Plaintiffs' motions for judgment on the pleadings as to their claims, (2) granted Plaintiffs' 12(b)(6) motions to dismiss Yadkin's misappropriation of trade secrets counterclaims, (3) granted Plaintiffs' motions for judgment on the pleadings as to Yadkin's remaining counterclaims, and (4) denied Yadkin's motions for judgment on the pleadings as to all claims. In both actions, Yadkin timely appealed. Because the facts and issues presented in these two cases are virtually identical, we consolidate Yadkin's appeals and render this single opinion on all issues.

## I. FACTUAL AND PROCEDURAL HISTORY

On 3 August 2004, Plaintiffs filed verified complaints in Watauga County Superior Court. According to the complaints, High Country Bank hired Washburn and Eller in 1998 and 2001, respectively, as senior vice presidents, and Plaintiffs entered into employment agreements with High Country Bank upon accepting their positions. The employment agreements were identical in all pertinent respects and contained the following relevant provisions:

5. Non-Competition and Confidentiality.

. . . .

(b) Non-competition. In consideration of employment of the Officer, during the Term and any subsequent Payment Period (as defined below), the Officer agrees that he will not, within the North Carolina counties in which the Bank has banking offices during the Term (the "Market"), directly or indirectly, own, manage, operate, join, control or participate in the management, operation or control of, or be employed by or connected in any manner with, any Person who Competes with the Bank, without the prior written consent of the Board; provided, however, that the provisions of this Paragraph 5(b) shall not apply prospectively in the event this Agreement is terminated by the Bank without Cause (as defined below) . . . .

. . . .

7. Termination and Termination Pay.

. . . .

(f) <u>Unapproved Change in Control Termination</u>. In the event of (i) the termination of this Agreement without Cause or (ii) the voluntary termination of this Agreement by the Officer, in each case in connection with, or within one (1) year after, any Change in Control (as defined below) which has not been approved in advance by a formal resolution of two-thirds (2/3) of the members of the Board who are not Affiliates of the Person effecting or proposing to effect the Change in Control ("Independent Directors"), the Officer shall be entitled at his election:

(A) to continue to receive his Base Salary and bonuses as provided in this Agreement for a period of three and ninety-nine one hundreths [sic] (3.99) years subsequent to the effective date of such termination; and

(B) to continue to participate in all Benefit Plans and Fringe Benefits, except qualified retirement plans or for the period of three and ninety-nine one hundreths [sic] (3.99) years.

Upon written notice by the Officer to the Bank, in lieu of paying the amount in item (A) above for a period of three and ninety-nine one hundredths (3.99) years in installments, the Officer shall be paid the Present Value of such Base Salary and bonuses in a lump sum within sixty (60) days of the termination of his employment. . . . The Officer shall also be entitled to a cash payment of an amount equal to the amount of any and all excise tax liability incurred by Officer pursuant to Section 4999 of the Internal Revenue Code of 1986, as amended, in connection with the payments and benefits compensation in [] Paragraph 7 . . . .

(g) <u>Approved Change in Control Termination</u>. Upon ten (10) days prior written notice, the Officer may declare this Agreement to have been terminated without Cause by the Bank, upon the occurrence of any of the following events, which have not been consented to in advance by the Officer in writing, following a Change in Control, approved in advance by a formal resolution of at least two-thirds (2/3) of the Independent Directors: (i) if the Officer is required to move his personal residence or perform his principal executive functions more than twenty (20) miles from the city limits of Boone, North Carolina; (ii) if the Bank should fail to maintain Benefit Plans and Fringe Benefits providing to him at least substantially the same level of benefits afforded the Officer as of the date of the change in Control; or (iii) if in the Officer's sole discretion, his responsi-

bilities or authority in the capacity described in Paragraph 1 have been diminished materially.

Upon such termination, or upon any other termination of this Agreement without Cause by the Bank within one (1) year following an approved Change in Control, the Officer shall be entitled to receive the compensation and benefit continuation when and as provided in Paragraph 7(f) above.

The complaints alleged that on 1 January 2004, Yadkin acquired and merged with High Country Financial Corporation, the parent company of High Country Bank. As a result of the merger, Plaintiffs became employees of Yadkin, and Yadkin assumed Plaintiffs' employment agreements. The complaints further alleged that on 3 May 2004, Washburn and Eller provided written notices to Yadkin declaring that, in their discretion, their job responsibilities and authority had been diminished as a result of the merger, and that, therefore, their employment agreements were terminated without cause pursuant to Paragraph 7(g). Furthermore, Plaintiffs informed Yadkin that, pursuant to Paragraph 5(b), they did not consider themselves bound by the agreements' non-competition provisions because their agreements had been terminated without cause. Finally, the complaints alleged that Plaintiffs were entitled to severance payments and benefits as provided for in Paragraph 7(f), but that Yadkin did not provide the payments and benefits to which Plaintiffs claimed entitlement. Plaintiffs advanced breach of contract claims and claims based on violations of North Carolina's Wage and Hour Act, and sought declaratory relief that they were not bound by the agreements' non-competition provisions.

On 2 September 2004, Yadkin filed notices that it had removed the actions to the United States District Court for the Western District of North Carolina. In its notices of removal filed with the federal court, Yadkin asserted that the provision of severance payments and benefits under the employment agreements constituted employee benefit plans and that, therefore, Plaintiffs' claims were completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

On 1 November 2004, AF Financial Group ("AF Financial"), a holding company whose subsidiary conducted banking activities in and around the same geographic area as Yadkin, hired Washburn as its President and Chief Executive Officer. Subsequently, AF Financial hired Eller to work with its subsidiary, AF Bank. On 17 August 2005,

Yadkin filed a complaint in Surry County Superior Court advancing five claims against AF Financial, including tortious interference with contract and misappropriation of trade secrets. On 23 March 2006, Judge Richard L. Doughton entered a partial summary judgment order dismissing Yadkin's tortious interference claim and its other claims to the extent those claims were based on the tortious interference claim. Judge Doughton did not address Yadkin's misappropriation of trade secrets claim or its other claims to the extent those claims were based on the misappropriation claim. Yadkin and AF Financial proceeded to conduct discovery on the surviving claims.

On 3 August 2006, federal district court Judge Richard L. Voorhees remanded Plaintiffs' actions to Watauga County Superior Court, concluding that Plaintiffs' claims were not preempted by ERISA. Accordingly, on 12 October 2006, Yadkin filed answers to Plaintiffs' complaints. Yadkin generally denied Plaintiffs' allegations and advanced nine affirmative defenses. Yadkin's fifth affirmative defense in each action was that Plaintiffs' breach of contract and Wage and Hour Act claims were preempted by ERISA. In its answers, Yadkin also advanced counterclaims against both Washburn and Eller. As to both Plaintiffs, Yadkin advanced claims of breach of contract, misappropriation of trade secrets, and unfair competition. As to Washburn, Yadkin advanced the additional claim of interference with contractual relations. In support of this claim, Yadkin alleged that Washburn caused AF Financial to hire Eller. Plaintiffs filed replies to Yadkin's counterclaims on or about 8 December 2006.

In the Surry County action, on 16 November 2006 Yadkin voluntarily dismissed without prejudice all of its remaining claims against AF Financial. Thereafter, Yadkin timely filed notice of appeal from Judge Doughton's partial summary judgment order. After Yadkin filed its notice of appeal, AF Financial filed a motion for Rule 11 sanctions, asserting that Yadkin's claims were not well grounded in fact, were not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and were brought for an improper purpose. Judge L. Todd Burke agreed and, on 8 January 2007, awarded $5,000.00 in costs and $25,000.00 in attorney's fees to AF Financial. Yadkin timely noticed appeal from the order imposing sanctions.[1]

---

1. In *Yadkin Valley Bank & Trust Co. v. AF Fin. Grp.*, —— N.C. App. ——, —— S.E.2d —— (May 6, 2008) (Nos. COA07-240, COA07-417) (unpublished), this Court affirmed both Judge Doughton's grant of partial summary judgment and Judge Burke's imposition of Rule 11 sanctions.

WASHBURN v. YADKIN VALLEY BANK & TR. CO.

[190 N.C. App. 315 (2008)]

In the Watauga County actions, on 29 December 2006 Plaintiffs filed motions for judgment on the pleadings as to their claims, Rule 12(b)(6) motions to dismiss Yadkin's misappropriation of trade secrets counterclaims, and motions for judgment on the pleadings as to Yadkin's other counterclaims. In both cases, Yadkin filed its own motion for judgment on the pleadings on 16 January 2007. Judge J. Marlene Hyatt conducted a hearing on the motions on 22 January 2007. By orders entered 6 February 2007, Judge Hyatt granted Plaintiffs' motions and denied Yadkin's motions. Judge Hyatt did not determine the amount of damages Plaintiffs were entitled to receive pursuant to their breach of contract and Wage and Hour Act claims. Yadkin timely filed notices of appeal. Judge Hyatt's orders are the subject of this opinion.

## II. PLAINTIFFS' CLAIMS

[1] Yadkin first argues that Judge Hyatt erred in granting Plaintiffs' motions for judgment on the pleadings on Plaintiffs' claims. Yadkin's primary assertion in support of this argument is that Judge Hyatt improperly relied on the doctrines of collateral estoppel and the law of the case to enter her orders. Generally, these two doctrines prevent parties from re-litigating issues that have been decided by other courts. See Mays v. Clanton, 169 N.C. App. 239, 609 S.E.2d 453 (2005) (discussing collateral estoppel doctrine); Creech ex rel. Creech v. Melnik, 147 N.C. App. 471, 556 S.E.2d 587 (2001) (discussing the law of the case doctrine), disc. review denied, 355 N.C. 490, 561 S.E.2d 498, reconsideration denied, 355 N.C. 747, 565 S.E.2d 194 (2002). Yadkin asserts that Judge Hyatt determined that Judge Doughton's partial summary judgment order, Judge Voorhees' remand order, and Judge Burke's order imposing sanctions precluded Yadkin from prevailing in the instant actions. Yadkin's assertion is flawed.

Of the three orders purportedly relied upon by Judge Hyatt, her orders granting judgment on the pleadings indicate that Judge Voorhees' remand order was the only order she could have considered in reaching her decisions. According to Judge Hyatt's orders, she reviewed only the parties' pleadings: Plaintiffs' complaints, Yadkin's answers and counterclaims, and Plaintiffs' replies to Yadkin's counterclaims. Judge Voorhees' remand order was attached as an exhibit to Plaintiffs' replies to Yadkin's counterclaims. However, the other orders, although they are included in the record on appeal, were not attached to any of the pleadings, and, thus, we cannot conclude that Judge Hyatt ever considered Judge Doughton's or Judge Burke's

orders. Judge Hyatt's limited review was proper in light of the procedural posture of the case before her, and had she reviewed other materials, we would treat her orders granting judgment on the pleadings as orders granting summary judgment. *See Helms v. Holland*, 124 N.C. App. 629, 478 S.E.2d 513 (1996) (reviewing trial court's order granting judgment on the pleadings as an order granting summary judgment because the trial court considered matters outside the pleadings in reaching its decision). Furthermore, although the transcript reveals that Plaintiffs argued collateral estoppel and the law of the case to Judge Hyatt based on Judge Doughton's and Judge Burke's orders, the orders granting judgment on the pleadings properly do not enunciate the reasons underlying the rulings. *United Virginia Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 339 S.E.2d 90 (1986). Accordingly, we are not constrained to determine whether these doctrines apply to the facts of the cases at bar.

[2] A motion for judgment on the pleadings is authorized by Rule 12(c) of the Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 12(c) (2005). "The rule's function is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Id.* (citation omitted). We review an order granting judgment on the pleadings in light of the following principles:

> The trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Id.* (citations omitted).

In the cases at bar, all material allegations of fact were admitted in the pleadings. Yadkin acknowledged that the agreements were valid, that the agreements speak for themselves, and that it had not paid Plaintiffs as detailed in the agreements' Paragraph 7(f). Additionally, the pleadings established that Yadkin's acquisition of

High Country Financial Corporation constituted an "Approved Change of Control" as set forth in the agreements, and that Plaintiffs declared the agreements terminated without cause because Plaintiffs determined, in their sole discretion, that their responsibilities or authority had been materially diminished. In its briefs to this Court, however, Yadkin contends that the trial court resolved the "disputed issue of fact" of whether Plaintiffs' responsibilities and authority were diminished as a result of the merger. This "issue" is not material, as the agreements clearly state that Plaintiffs were entitled to make this determination in their "sole discretion." Furthermore, we note that Yadkin filed its own motions for judgment on the pleadings, apparently concluding, as we have, that all material allegations of fact were admitted in the pleadings. As contract and statutory interpretation are matters of law, *Shelton v. Duke Univ. Health Sys.*, 179 N.C. App. 120, 633 S.E.2d 113 (2006), *disc. review denied*, 361 N.C. 357, 643 S.E.2d 591 (2007); *Am. Ripener Co. v. Offerman*, 147 N.C. App. 142, 554 S.E.2d 407 (2001), *disc. review denied*, 355 N.C. 210, 559 S.E.2d 796 (2002), only questions of law remained for Judge Hyatt to determine, to wit: (1) were Plaintiffs entitled to Paragraph 7(f) payments and benefits, (2) were Plaintiffs bound by the non-competition provisions, (3) were Plaintiffs entitled to relief under the Wage and Hour Act, and (4) did any of Yadkin's affirmative defenses bar Plaintiffs' recovery.

### A. Employment Agreements

[3] Covenants not to compete restrain trade and are scrutinized strictly. *Kennedy v. Kennedy*, 160 N.C. App. 1, 584 S.E.2d 328, *appeal dismissed*, 357 N.C. 658, 590 S.E.2d 267 (2003). To the extent the language of a written instrument is ambiguous, its provisions are to be strictly construed against the drafting party. *Reichhold Chems., Inc. v. Goel*, 146 N.C. App. 137, 555 S.E.2d 281 (2001), *appeal dismissed and disc. review denied*, 356 N.C. 677, 577 S.E.2d 634 (2003).

By the plain, unequivocal, and clear terms of the employment agreements, which were drafted by Yadkin, Plaintiffs were entitled to the Paragraph 7(f) payments and benefits. Paragraph 7(g) gave Plaintiffs, and only Plaintiffs, the discretion to declare their employment terminated without cause following Yadkin's merger with High Country Financial Corporation. Plaintiffs exercised their discretion and complied with all the requirements of the agreements in communicating their declarations to Yadkin. Thus, Plaintiffs were "entitled to receive the compensation and benefit continuation" provided for in Paragraph 7(f). Moreover, the non-competition provisions spe-

cifically and unequivocally stated that they "shall not apply prospectively" if Plaintiffs exercised their discretion in declaring their employment terminated without cause. Thus, Plaintiffs were not bound by the non-competition provisions.

## B. Wage and Hour Act

**[4]** We also conclude that Plaintiffs were entitled to judgment on the pleadings on their Wage and Hour Act claims. Pursuant to that Act, an "employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6 (2005). The Act also provides that "[e]mployees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday . . . ." N.C. Gen. Stat. § 95-25.7 (2005). The Act specifically includes "severance pay" in its definition of "wage." N.C. Gen. Stat. § 95-25.2 (2005). A statute such as this one, "that is *free from ambiguity, explicit in terms and plain of meaning* must be enforced as written, without resort to judicial construction." *Clark v. Sanger Clinic, P.A.*, 142 N.C. App. 350, 354, 542 S.E.2d 668, 671 (quotation marks and citation omitted), *disc. review denied*, 353 N.C. 450, 548 S.E.2d 524 (2001). As the Paragraph 7(f) payments constitute severance pay, Yadkin violated the Wage and Hour Act, and Plaintiffs were entitled to relief thereunder.

## C. Yadkin's Affirmative Defenses

**[5]** Finally, we agree with Yadkin that, in entering her orders granting judgment on the pleadings, Judge Hyatt "must have concluded that none of Yadkin's [] affirmative defenses had any potential merit as a matter of law based solely on the consideration of the substance contained in the four corners of the pleadings." We disagree, however, with Yadkin's assertion that Judge Hyatt erred in reaching this conclusion. None of Yadkin's affirmative defenses bar Plaintiffs' recovery under their claims. It is evident from the pleadings that Plaintiffs did not breach the employment agreements, that Plaintiffs did not engage in any misconduct, and that Plaintiffs' claims are not preempted by ERISA. In sum, Judge Hyatt did not err in entering her orders granting judgment on the pleadings in favor of Plaintiffs.

## III. YADKIN'S COUNTERCLAIMS

### A. Judgment on the Pleadings

**[6]** Yadkin next argues that Judge Hyatt erred in granting judgment on the pleadings on its counterclaims of breach of contract,

tortious interference with contractual relations, and unfair competition. We disagree.

As discussed above, the non-competition provisions did not apply to Plaintiffs prospectively following their termination. Thus, Plaintiffs did not breach their agreements. Similarly, since Eller was not bound by the non-competition provision in his agreement, there was no contractual relationship with which Washburn could have interfered. *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) ("The tort of interference with contract has five elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person . . . .") (citation omitted). Finally, since Plaintiffs are not bound by the non-competition provisions, it simply cannot be said that they engaged in unfair methods of competition with Yadkin. *See* N.C. Gen. Stat. § 75-1.1(a) (2005) ("Unfair methods of competition in or affecting commerce . . . are declared unlawful."). Even if Plaintiffs were bound by the provisions, " 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.' " *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) (quoting *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992)). In sum, the trial court properly granted judgment on the pleadings as to these counterclaims.

### B. 12(b)(6) Failure to State a Claim

[7] Finally, Yadkin argues that Judge Hyatt erred in granting Plaintiffs' Rule 12(b)(6) motions to dismiss Yadkin's misappropriation of trade secrets counterclaims.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the issue is not whether a claimant will prevail, but whether the claimant is entitled to offer evidence in support of the claim. *Ryan v. Univ. of N.C. Hosps.*, 128 N.C. App. 300, 494 S.E.2d 789, *disc. review improvidently allowed*, 349 N.C. 349, 507 S.E.2d 39 (1998). "The only purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleading against which it is directed." *Azzolino v. Dingfelder*, 71 N.C. App. 289, 295, 322 S.E.2d 567, 573 (1984) (citation omitted), *aff'd in part and rev'd in part on other grounds*, 315 N.C. 103, 337 S.E.2d 528 (1985), *cert. denied*, 479 U.S. 835, 93 L. Ed. 2d 75 (1986). The same rules regarding the sufficiency of a complaint to withstand a motion to dismiss apply to a claim for relief stated by a defendant in a coun-

terclaim. *Brewer v. Hatcher*, 52 N.C. App. 601, 279 S.E.2d 69 (1981). This Court reviews *de novo* a trial court's ruling on a motion to dismiss pursuant to Rule 12(b)(6). *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 580 S.E.2d 1, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

North Carolina's Trade Secrets Protection Act ("TSPA") provides that the owner of a trade secret "shall have remedy by civil action for misappropriation" of the secret. N.C. Gen. Stat. § 66-153 (2005).

"Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3) (2005). " 'Misappropriation' means acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152(1) (2005). The TSPA also provides that "actual or threatened misappropriation of a trade secret may be preliminarily enjoined during the pendency of the action and shall be permanently enjoined upon judgment finding misappropriation . . . ." N.C. Gen. Stat. § 66-154(a) (2005).

In *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 606 S.E.2d 359 (2004), this Court affirmed the trial court's denial of the plaintiff's request for a preliminary injunction in plaintiff's trade secrets action. We stated:

To plead misappropriation of trade secrets, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Analog Devices, Inc.* [*v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003)] (citations omit-

ted); *see also FMC Corp.* [*v. Cyprus Foote Mineral Co.*, 899 F.Supp. 1477, 1484 (W.D.N.C. 1995)] (preliminary injunction inappropriate where trade secret described only in general terms and where evidence of blatant misappropriation not shown).

*Id.* at 510-11, 606 S.E.2d at 364. We then stated that a complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is "insufficient to state a claim for misappropriation of trade secrets." *Id.* at 511, 606 S.E.2d at 364 (citing *Analog Devices, Inc.*, 157 N.C. App. at 469-70, 579 S.E.2d at 454).

In the present case, Yadkin alleged Plaintiffs "acquired knowledge of Yadkin's business methods; clients, their specific requirements and needs; and other confidential information pertaining to Yadkin's business." Yadkin further alleged that this "confidential client information and confidential business information" constituted trade secrets as defined by the TSPA and that "Yadkin believes [Plaintiffs] used its trade secrets on behalf of AF Financial without Yadkin's permission." These allegations do not identify with sufficient specificity either the trade secrets Plaintiffs allegedly misappropriated or the acts by which the alleged misappropriations were accomplished. The identification of the trade secrets allegedly misappropriated is broad and vague. Yadkin's allegation that it "believes [Plaintiffs] used its trade secrets" is general and conclusory. *VisionAIR, Inc.*, 167 N.C. App. 504, 606 S.E.2d 359. The trial court did not err in dismissing Yadkin's misappropriation of trade secrets counterclaims. Yadkin's argument is overruled.

For the reasons stated above, the orders of the trial court in both COA07-612 and COA07-613 are affirmed.

AFFIRMED.

Chief Judge MARTIN and Judge McGEE concur.