**CLINICAL STAFFING, INC., d/b/a Dzeel Clinical, Plaintiff,**

v.

**WORLDWIDE TRAVEL STAFFING LIMITED, Defendant.**

No. 5:12–CV–647–D.

United States District Court,
E.D. North Carolina,
Western Division.

Oct. 21, 2013.

Julia Y. Kirkpatrick, Burns, Day & Presnell, P.A., Raleigh, NC, for Plaintiff.

Gale Ellen Carroll, Dinsmore & Shohl LLP, Morgantown, WV, Ryan W. Green, Dinsmore & Shohl LLP, Cincinnati, OH, for Defendant.

**ORDER**

JAMES C. DEVER III, Chief Judge.

On September 10, 2012, Clinical Staffing, Inc. d/b/a Dzeel Clinical ("Dzeel") sued its competitor Worldwide Travel Staffing, Limited ("Worldwide Travel Staffing") in Wake County Superior Court alleging tortious interference with contract and a violation of the North Carolina Unfair and Deceptive Trade Practices Act [D.E. 1–2]. Worldwide Travel Staffing timely removed the action to this court, and the court has jurisdiction based on diversity jurisdiction [D.E. 1]. Essentially, Dzeel contends that after Worldwide Travel Staffing won a contract with the North Carolina Department of Health and Human Services ("NCDHHS") to provide nursing services, Worldwide Travel Staffing tortiously interfered with contracts that Dzeel had with numerous nurses that Dzeel had hired and placed in various NCDHHS facilities. In support of its two claims against Worldwide Travel Staffing, Dzeel relies on a non-competition provision in the nurses' contracts. Because the non-competition provision in each Dzeel contract is unenforceable under North Carolina law, the court grants Worldwide Travel Staffing's motion for summary judgment.

I.

Dzeel and Worldwide Travel Staffing are staffing companies that compete in filling long-term and short-term nursing positions. In July 2012, the NCDHHS awarded a non-exclusive three-year staffing contract to Worldwide Travel Staffing to provide temporary nursing services for the North Carolina Division of State Operated Healthcare Facilities. After Worldwide Travel Staffing won the contract, a number of nurses who worked for Dzeel resigned and began accepting positions with Worldwide Travel Staffing. In turn, Worldwide Travel Staffing placed a number of these nurses in the same NCDHHS facilities where the nurses had worked as Dzeel employees.

Dzeel's complaint relies on a non-competition provision in each Dzeel employee's contract The non-competition provision states:

I understand that I have come to Dzeel Clinical seeking per diem, contract, or permanent placement, and I will be submitted to one or all of the company's clients. I agree that for a period of six months immediately after the termination of my employment with Dzeel Clinical, I will not directly or indirectly, make known to any person, firm, or corporation the terms of my employment. *I will not provide service to any Dzeel client or individual who has received services under the direction of Dzeel Clinical, for a period of (6) six months from my termination date.*

This also applies to all written material and information pertinent to the business and distributed to any person/organization unrelated to ·Dzeel Clinical. Such material and information includes but is not limited to client lists, promotional material, operating policy and procedure manuals, personnel files, forms, etc. as these materials are considered proprietary.

I further understand and agree that after Dzeel Clinical has submitted my profile to a potential employer, on my behalf, and at my request, I will not permit or pursue a duplicate submission from any other agency for a period of (6) six months. I give Dzeel Clinical permission to instruct said client(s) to destroy duplicate submissions. *I further understand and agree that I will not be eligible for employment at said facility through Dzeel or any other agency, if I violate this agreement.*

[D.E. 22–1] (emphasis added). Dzeel asserts two claims against Worldwide Travel Staffing. First, Dzeel alleges tortious interference with · contractual relations. [D.E. 1–2], Compl. ¶¶ 26–31. Second, Dzeel alleges a violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). *Id.* ¶¶ 32–43. Both claims stem from Worldwide Travel Staffing's decision to recruit and hire former Dzeel nurses, to tell the former Dzeel nurses that the non-competition provision in each nurse's contract with Dzeel was not enforceable, and to place many of the former Dzeel nurses at the same NCDHHS facility where they had previously worked for Dzeel. According to Dzeel, Worldwide Travel Staffing engaged in this conduct to avoid costs associated with recruiting, training, and orienting nurses. *See id.* ¶¶ 26–43.

On May 24, 2013, Worldwide Travel Staffing filed a motion for summary judg-ment [D.E. 20] and a supporting memorandum [D.E. 20–1]. On June 14, 2013, Dzeel responded in opposition [D.E. 25], including three affidavits and various exhibits [D.E. 22–24]. On June 27, 2013, Worldwide Travel Staffing replied [D.E. 26].

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party (i.e., Dzeel) and applies well-established principles under .Federal Rule of Civil Procedure 56. *See, e.g.,* Fed.R.Civ.P. 56; *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325–26, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); .*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. The party seeking summary judgment must initially come forward and demonstrate an absence of a genuine issue of material fact *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. *See Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. It is insufficient to show a "mere ... scintilla of evidence in support of the [nonmoving party's] position ...; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505.

The court is exercising diversity jurisdiction, and the parties agree that North Carolina substantive law applies. In applying North Carolina substantive law, the court "must determine how the Supreme Court of [North] Carolina would rule. If the Supreme Court of [North] Carolina has spoken neither directly nor indirectly on the particular issue before us, [this court is] called upon to predict how that court would rule if presented with the issue. In making that prediction, [this court] may consider lower court opinions in [North] Carolina, the teachings of treatises, and the practices of other states." *Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Bev. Co.*, 433 F.3d 365, 369 (4th Cir.2005) (citations and quotations omitted).

Worldwide Travel Staffing argues that the non-competition provision "is so poorly constructed as not to even constitute a noncompete for which analysis under noncompete legal principles is even possible." [D.E. 20–1] 3. Alternatively, Worldwide Travel Staffing argues that if the non-competition provision contains competition restrictions that can be identified with any reasonable specificity, such restrictions are not connected either at all, or in any reasonable way, to time, geography, or customers. Thus, according to Worldwide Travel Staffing, the non-competition provision is unenforceable, and Dzeel's two claims fail. *Id.*

■ Dzeel responds in two ways. First, Dzeel contends that Worldwide Travel Staffing's motion for summary judgment is premature because discovery is not yet complete. [D.E. 25] 5. Oddly, however, Dzeel did not move pursuant to Rule 56(d)(2) of the Federal Rules of Civil Procedure and specifically explain why it needed more time to oppose Worldwide Travel Staffing's motion for summary judgment.[1] Generally, "summary judgment is appropriate only after adequate time for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996) (quotation omitted). Moreover, Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed.R.Civ.P. 56(d). Accordingly, Rule 56(d) permits a court to delay ruling on a motion for summary judgment if the nonmoving party shows by affidavit or declaration specific discovery that the nonmoving party needs to oppose summary judgment *Id.; Crawford–El v. Britton*, 523 U.S. 574, 599 n. 20, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Nader v. Blair*, 549 F.3d 953, 961–62 (4th Cir. 2008); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 n. 2 (4th Cir.2004).

■ A party requesting relief pursuant to Rule 56(d) must specifically demonstrate that the party has not had sufficient time to obtain and present information it needs to oppose the summary judgment

1. Effective December 1, 2010, the Supreme Court amended Rule 56. What is now Rule 56(d) previously was codified as Rule 56(f). *See* Fed.R.Civ.P. 56, advisory committee's note ("The standard for granting summary judgment remains unchanged ... Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."); *see also* Order Amending Fed.R.Civ.P. (U.S. Apr. 28, 2010) ("[T]he foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2010, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending."); *Merchant v. Prince George's Cnty.*, 436 Fed.Appx. 218, 220 n. 1 (4th Cir.2011) (per curiam) (unpublished).

motion. *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir.2002). In considering a party's request for relief under Rule 56(d), a court may consider the diligence that the non-moving party has demonstrated in pursuing discovery. *See White,* 375 F.3d at 295 n. 2; *Harrods Ltd.,* 302 F.3d at 245; *Strag v. Bd. of Trs.,* 55 F.3d 943, 953–54 (4th Cir.1995). A court also may consider whether the case "involves complex factual questions about intent and motive." *Harrods Ltd.,* 302 F.3d at 247; *cf. Nader,* 549 F.3d at 962 ("[T]he Defendants' motives and intent were not at issue in the motion for summary judgment. . . .").

Dzeel contends that the court "would benefit from further fact development" in deciding whether the non-competition language is enforceable. According to Dzeel, the court needs information to conduct "a fact-intensive analysis regarding the reasonableness of [the] restrictions contained within Dzeel's Employment Agreement" [D.E. 25] 5.

■ The court disagrees that this case requires a fact-intensive analysis in order to resolve Worldwide Travel Staffing's motion for summary judgment. Because Dzeel did not file an appropriate Rule 56(d) affidavit or declaration and has failed to demonstrate a specific need to develop a factual record in order to oppose Worldwide Travel Staffing's motion for summary judgment, the court declines to await further discovery before ruling on Worldwide Travel Staffing's motion for summary judgment.

■ Second, Dzeel argues that its former employee contracts included enforceable non-competition provisions designed to protect Dzeel's legitimate business interest in Dzeel's goodwill with the NCDHHS and the costs that Dzeel incurred in recruiting and training the nurses. *See* [D.E. 25] 68. Dzeel also argues that the non-competition provisions are reasonable and no broader than necessary to protect Dzeel's legitimate business interests. *Id.* 8–11. As such, Dzeel argues that the court should deny Worldwide Travel Staffing's motion for summary judgment.

■ The dispute hinges on the enforceability of the non-competition provisions under North Carolina law. Covenants not to compete between an employer and employee are not viewed favorably in modern law. *See Henley Paper Co. v. McAllister,* 253 N.C. 529, 534, 117 S.E.2d 431, 434 (1960); *Kadis v. Britt,* 224 N.C. 154, 159–60, 29 S.E.2d 543, 546 (1944); *Farr Assocs., Inc. v. Baskin,* 138 N.C.App. 276, 279, 530 S.E.2d 878, 881 (2000); *Hartman v. W.H. Odell & Assocs., Inc.,* 117 N.C.App. 307, 311, 450 S.E.2d 912, 916 (1994).[2] The party who seeks to enforce a covenant not to compete has the burden to prove that the covenant is reasonable. *See, e.g., Kadis,* 224 N.C. at 158, 29 S.E.2d at 545.

■ North Carolina courts will enforce a covenant not to compete if it is: "(1) in writing; (2) reasonable as to [the] terms, time, and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) not against public policy." *Triangle Leasing Co. v. McMahon,* 327 N.C. 224, 228, 393 S.E.2d 854, 857 (1990); *United Labs., Inc. v. Kuykendall,* 322 N.C. 643, 649–50, 370

**2.** North Carolina appellate courts "recognize [a] distinction between covenants not to compete in connection with the sale of a business and covenants not to compete in connection with a contract of employment The latter are more closely scrutinized than the former." *Keith v. Day,* 81 N.C.App. 185, 193, 343 S.E.2d 562, 567 (1986) (collecting cases); *see Jewel Box Stores Corp. v. Morrow,* 272 N.C. 659, 662–66, 158 S.E.2d 840, 843–45 (1968).

S.E.2d 375, 380 (1988); *Eng'g Assocs., Inc. v. Pankow*, 268 N.C. 137, 139, 150 S.E.2d 56, 58 (1966); *James C. Greene Co. v. Kelley*, 261 N.C. 166, 168, 134 S.E.2d 166, 167 (1964); *Orkin Exterminating Co. v. Griffin*, 258 N.C. 179, 181, 128 S.E.2d 139, 140–41 (1962) (per curiam); *Asheville Assocs., Inc. v. Miller*, 255 N.C. 400, 402, 121 S.E.2d 593, 594 (1961).

The reasonableness of a non-competition covenant is a matter of law for the court to decide. *See Shute v. Heath*, 131 N.C. 281, 282, 42 S.E. 704, 704 (1902). "To be valid, the restrictions must be no wider in scope than is necessary to protect the business of the employer." *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C.App. 649, 656, 670 S.E.2d 321, 327 (2009) (quotation omitted); *see Triangle Leasing Co.*, 327 N.C. at 229, 393 S.E.2d at 857; *Manpower of Guilford Cnty., Inc. v. Hedgecock*, 42 N.C.App. 515, 521, 257 S.E.2d 109, 114 (1979). "When considering the enforceability of a covenant not to compete, a court examines the reasonableness of its time and geographic restrictions, balancing the substantial right of the employee to work with that of the employer to protect its legitimate business interests." *Okuma Am. Corp. v. Bowers*, 181 N.C.App. 85, 86, 638 S.E.2d 617, 618 (2007). In evaluating a covenant not to compete, a court must consider time and geographic limitations in tandem. *See, e.g., Jewel Box Stores Corp.*, 272 N.C. at 665, 158 S.E.2d at 844. Generally, the shorter the time period in the covenant not to compete, the larger the geographic restriction may be. *See id.*, 158 S.E.2d at 844. Likewise, the longer the time period in the covenant not to compete, the smaller the geographic restriction must be. *Id.*, 158 S.E.2d at 844.

In assessing the reasonableness of the terms of a covenant not to compete, North Carolina law does not permit an employer to use a covenant not to compete to prevent an employee from working for a competitor in any capacity. *See, e.g., Henley Paper Co.*, 253 N.C. at 531–35, 117 S.E.2d at 432–34; *Hejl v. Hood, Hargett & Assocs., Inc.*, 196 N.C.App. 299, 306–07, 674 S.E.2d 425, 430 (2009); *VisionAIR, Inc. v. James*, 167 N.C.App. 504, 508–09, 606 S.E.2d 359, 362–63 (2004); *Hartman*, 117 N.C.App. at 317, 450 S.E.2d at 920; *Elec. S., Inc. v. Lewis*, 96 N.C.App. 160, 166–68, 385 S.E.2d 352, 356–57 (1989). Nonetheless, the "protection of customer relationships and good will against misappropriation by departing employees is well recognized as a legitimate protectable interest of the employer." *Kuykendall*, 322 N.C. at 651, 370 S.E.2d at 381. Moreover, a properly drafted covenant not to compete can protect a legitimate business interest, particularly where the nature of the employment brings "the employee in personal contact with patrons or customers of the employer, or enable[s] [the employee] to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers." *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 408, 302 S.E.2d 754, 763 (1983); *Harwell Enters., Inc. v. Heim*, 276 N.C. 475, 480, 173 S.E.2d 316, 320 (1970); *Med. Staffing Network, Inc.*, 194 N.C.App. at 656, 670 S.E.2d at 327; *see Sonotone Corp. v. Baldwin*, 227 N.C. 387, 388–91, 42 S.E.2d 352, 353–55 (1947); *Scott v. Gillis*, 197 N.C. 223, 224, 148 S.E. 315, 317 (1929). Thus, where an employee has such customer contact, the employer has a legitimate business interest in preventing the employee from moving into an identical position with identical duties with a competitor vis-á-vis such customers. *See, e.g., Med. Staffing Network, Inc.*, 194 N.C.App. at 656, 670 S.E.2d at 327; *Okuma Am. Corp.*, 181 N.C.App. at 86–87, 638 S.E.2d at 618–19; *VisionAIR, Inc.*, 167

N.C.App. at 509 n. 1, 606 S.E.2d at 362 n. 1.

Here, the non-competition provision states, "I will not provide service to any Dzeel client or individual who has received services under the direction of Dzeel Clinical for a period of (6) six months from my termination date." [D.E. 22–1]. The non-competition provision does not define "service." Thus, this court must give the term "service" its "usual and ordinary" meaning. *See Piedmont Bank & Trust Co. v. Stevenson,* 79 N.C.App. 236, 241, 339 S.E.2d 49, 52 (1986).

The dictionary defines "service" as "the occupation or function of serving; the work performed by one that serves." *Webster's New Collegiate Dictionary* 1051 (1979). Although Dzeel argues that this court should construe the term "service" to mean nursing service, that is not what the provision says. Moreover, Dzeel drafted the provision and even if the court believed the word "service" to be ambiguous (which it does not), the court would construe the ambiguity against Dzeel. *See, e.g., Washburn v. Yadkin Valley Bank & Trust Co.,* 190 N.C.App. 315, 323–24, 660 S.E.2d 577, 583–84 (2008); *Novacare Orthotics & Prosthetics E., Inc. v. Speelman,* 137 N.C.App. 471, 476, 528 S.E.2d 918, 921 (2000); *Lewis,* 96 N.C.App. at 166–68, 385 S.E.2d at 356–57. Furthermore, under North Carolina law, this court cannot "blue pencil" the word "service" and add the word "nursing" to the non-competition provision to attempt to make the non-competition provision enforceable. *See, e.g., Whittaker Gen. Med. Corp. v. Daniel,* 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989); *Henley Paper Co.,* 253 N.C. at 535, 117 S.E.2d at 435; *Noe v. McDevitt,* 228 N.C. 242, 245, 45 S.E.2d 121, 123 (1947); *VisionAIR, Inc.,* 167 N.C.App. at 508, 606 S.E.2d at 362; *Hartman,* 117 N.C.App. at 309–11, 450 S.E.2d at 915–16; *cf. Welcome*

*Wagon Int'l, Inc. v. Pender,* 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961) (recognizing court of equity's power to take notice of territorial divisions that the parties included in a covenant not to compete and to enforce the restrictions in the territorial divisions deemed reasonable and to refuse to enforce divisions deemed unreasonable).

As written, the covenant not to compete prohibits the former Dzeel employees from providing any service of any kind to "any Dzeel client or individual ... for a period of (6) six months from [the employee's] termination date." [D.E. 22–1]. Moreover, the restriction applies not only to those clients or individuals who have interacted with the former Dzeel employee, but to any Dzeel client anywhere in the world. Thus, for example, a Dzeel employee who signed this non-competition provision could not provide food preparation services, custodial services, or secretarial services to any "Dzeel client or individual" anywhere in the world for six months. As written, the non-competition provision is overbroad as to terms and unenforceable. *Whittaker Gen. Med. Corp.,* 324 N.C. at 528, 379 S.E.2d at 828 ("If a contract by an employee in restraint of competition is too broad to be a reasonable protection to the employer's business it will not be enforced."); *see Henley Paper Co.,* 253 N.C. at 535, 117 S.E.2d at 434–35; *Outdoor Lighting Perspectives Franchising, Inc. v. Harders,* —— N.C.App. ——, 747 S.E.2d 256, 265, 267 (2013); *Phelps Staffing, LLC v. C.T. Phelps, Inc.,* —— N.C.App. ——, 740 S.E.2d 923, 927–28 (2013); *Hejl,* 196 N.C.App. at 306–07, 674 S.E.2d at 430; *Med. Staffing Network, Inc.,* 194 N.C.App. at 657, 670 S.E.2d at 328; *Kinesis Advertising, Inc. v. Hill,* 187 N.C.App. 1, 14–15, 652 S.E.2d 284, 294–95 (2007); *VisionAIR, Inc.,* 167 N.C.App. at 508–09, 606 S.E.2d at 362–63; *Farr Assocs., Inc.,* 138 N.C.App. at 281–83, 530 S.E.2d at 882–83; *Hartman,* 117 N.C.App. at 317, 450 S.E.2d at

920; *Masterclean of N.C. Inc. v. Guy*, 82 N.C.App. 45, 50–51, 345 S.E.2d 692, 695–96 (1986); *Starkings Court Reporting Servs., Inc. v. Collins*, 67 N.C.App. 540, 542, 313 S.E.2d 614, 615–16 (1984); *see also Asheboro Paper & Packaging, Inc. v. Dickinson*, 599 F.Supp.2d 664, 674–76 (M.D.N.C. 2009); *cf. Prof'l Liability Consultants, Inc. v. Todd*, 345 N.C. 176, 176, 478 S.E.2d 201, 202 (1996) (per curiam) (adopting the dissenting opinion of Judge Smith and refusing to enforce a client-based convent not to compete that contained no geographic or numerical restriction as to the client base).[3]

■■■ Because the non-competition provision is unenforceable, the two claims in Dzeel's complaint fail. First, Dzeel alleges tortious interference with contract. *See* Compl. ¶¶ 26–31. Under North Carolina law, Dzeel must prove the following five elements: (1) "that a valid contract existed between [Dzeel] and a third person [i.e., Dzeel's former employees], conferring upon [Dzeel] some contractual right clients. However, Judge Smith's opinion in *Todd* (which the Supreme Court adopted) called this belief into question. *See Prof'l Liability Consultants, Inc. v. Todd*, 122 N.C.App. 212, 219, 468 S.E.2d 578, 582 (1996) (Smith, J., dissenting) ("Plaintiff's assertion that the covenant's geographic scope equals its customer base is no more than a tautology."). Moreover, in *Todd*, Judge Smith did not analyze these earlier cases from the Supreme Court of North Carolina.

Since *Todd* the North Carolina Court of Appeals has cited *Kuykendall, Whittaker General Medical Corporation*, and *Triangle Leasing Company*, and held, in line with the pre-*Todd* understanding, that a client-based covenant not to compete without an expressly defined geographical territory is not automatically invalid. *See Okuma Am. Corp.*, 181 N.C.App. at 90–91, 638 S.E.2d at 620–22; *Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 147 N.C.App. 463, 469, 556 S.E.2d 331, 335–36 (2001); *Farr Assocs., Inc.*, 138 N.C.App. at 281–83, 530 S.E.2d at 882–83; *Market Am., Inc. v. Christman–Orth*, 135 N.C.App. 143, 153–54, 520 S.E.2d 570, 578 (1999). The covenant at issue in this case is client-based and does not include an expressly defined geographic territory. However, given that the covenant's term in this case is unreasonable, this court need not seek to reconcile *Todd* with earlier cases from the Supreme Court of North Carolina or later cases from the North Carolina Court of Appeals in order to determine whether the time and territory restriction in the covenant also is unreasonable. *Cf. A.E.P. Indus., Inc.*, 308 N.C. at 402–05, 302 S.E.2d at 760–62; *see also Am. Hot Rod Ass'n, Inc. v. Carrier*, 500 F.2d 1269, 1277–79 (4th Cir.1974).

---

**3.** The Supreme Court of North Carolina has yet to clarify its opinion in *Todd* and state whether a properly drafted client-based covenant not to compete can be enforceable even without an express geographical territory being defined in the covenant not to compete. Before *Todd*, many believed that noncompete agreements generally required an expressly defined geographical territory in order to be enforceable, but that a client-based noncompete agreement without an expressly defined geographical territory could be enforceable in North Carolina. *Compare Pankow*, 268 N.C. at 139, 150 S.E.2d at 58 (invalidating a covenant not to compete restricting a project engineer for five years from working for any competitor of his employer and containing no expressly defined geographic territory), *with Kuykendall*, 322 N.C. at 657–60, 370 S.E.2d at 385–86 (applying Illinois law and enforcing a noncompetition agreement that included client-based restrictions for 18 months without any expressly defined geographical territory other than the employee's sales territory at the time of termination), *and Whittaker Gen. Med. Corp.*, 324 N.C. at 528–29, 379 S.E.2d at 828 (relying on *Kuykendall* and enforcing a noncompetition agreement that included client-based restrictions for 24 months without any expressly defined geographical territory other than the employee's sales territory at the time of termination), *and Triangle Leasing Co.*, 327 N.C. at 229, 393 S.E.2d at 857–58 (enforcing noncompetition agreement restricting an employee for 24 months from soliciting employer clients in areas in which the employer operates without any expressly defined geographical territory). After all, such a client-based covenant is more narrowly tailored than a general geographic restriction and implicitly contains a geographic restriction tied to the location of the employer's

against the third person"; (2) "that the outsider [i.e., Worldwide Travel Staffing] had knowledge of [Dzeel's] contract with the third person"; (3) "that the outsider intentionally induced the third person not to perform [the] contract with [Dzeel]"; (4) "that in so doing the outsider acted without justification"; and (5) "that the outsider's act caused [Dzeel] actual damages." *Peoples Sec. Life Ins. Co. v. Hooks,* 322 N.C. 216, 220, 367 S.E.2d 647, 649–50 (1988).

■ As a matter of law, Dzeel cannot prove the first element or the fourth element of its tortious interference with contract claim. As for the first element, because the non-competition provision in the contracts between Dzeel and its former employees is not valid, Dzeel cannot prove "that a valid contract existed between [Dzeel] and a third person [i.e., Dzeel's former employees], conferring upon Dzeel some contractual right against the third person [i.e., the right to enforce the non-competition provision]." *Id.,* at 220, 367 S.E.2d at 649. As for the fourth element, *Hooks* teaches that Worldwide Travel Staffing did not "act[ ] without justification" in recruiting, hiring, and placing the former Dzeel employees in NCDHHS facilities. *Id.* at 220, 367 S.E.2d at 649. This conclusion concerning the fourth element holds true even though Worldwide Travel Staffing was aware of the non-competition provision in the former Dzeel employees' contracts when it recruited, hired, and placed the former Dzeel nurses into positions at NCDHHS facilities. *Id.* at

220–21, 367 S.E.2d at 650.[4] Thus, the court grants summary judgment to Worldwide Travel Staffing on Dzeel's tortious interference with contract claim.

■ As for Dzeel's UDTPA claim, Dzeel must prove

(1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiff or to his business. *See, e.g.,* N.C. Gen. Stat. § 75–1.1; *Dalton v. Camp,* 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); *Walker v. Fleetwood Homes of NC., Inc.,* 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); *RD & J Props. v. Lauralea–Dilton Enters., LLC,* 165 N.C.App. 737, 748, 600 S.E.2d 492, 500 (2004). The conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank,* 80 F.3d 895, 902 (4th Cir.1996); *Branch Banking & Trust Co. [v. Thompson],* 107 N.C.App. [53], 61, 418 S.E.2d [694], 700 [ (1992) ]. Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. *See, e.g., Tucker v. Boulevard at Piper Glen LLC,* 150 N.C.App. 150, 153, 564 S.E.2d 248, 250 (2002); *Norman Owen Trucking, Inc. v. Morkoski,* 131 N.C.App. 168, 177, 506 S.E.2d 267, 273 (1998).

*Kelly v. Georgia–Pac. LLC,* 671 F.Supp.2d 785, 798–99 (E.D.N.C.2009).

Dzeel contends that Worldwide Travel Staring violated the UDTPA by advising Dzeel employees that the non-competition

4. Indeed, the Supreme Court of North Carolina has made clear that this conclusion would hold true even if the non-competition provision in each contract was enforceable. *See Hooks,* 322 N.C. at 220–23, 367 S.E.2d at 649–51; *cf. Kuykendall,* 322 N.C. at 660–63, 370 S.E.2d at 386–88 (where competitor knew that the new-hire employee was subject to a covenant not to compete, told the new-

hire employee that it would pay all legal expenses that the new-hire employee incurred due to breaching the covenant with his former employer, and then solicited plaintiff's customers with information supplied by the new-hire employee even after the new-hire employee was enjoined from soliciting plaintiff's customers, plaintiff stated a claim of tortious interference against the competitor).

provision between Dzeel and the employees was not enforceable and then recruiting and hiring many former Dzeel employees to work in the same NCDHHS facility in which they worked for Dzeel. *See* Compl. ¶¶ 37–38. According to Dzeel, Worldwide Travel Staffing engaged in this behavior in order to avoid the costs of recruiting, training, and orienting new employees. *Id.* ¶ 39.

As a matter of law, Worldwide Travel Staffing's alleged conduct was not unfair or deceptive under the UDTPA. Rather, Worldwide Travel Staffing correctly opined that the noncompetition provision in the Dzeel contracts was unenforceable. Moreover, Worldwide Travel Staffing engaged in justifiable and appropriate competition in recruiting, hiring, and placing the former Dzeel employees. Simply put, Worldwide Travel Staffing engaged in no unfair or deceptive act or practice. Thus, the court grants summary judgment to Worldwide Travel Staffing on Dzeel's UDTPA claim. *See Phelps Staffing, LLC,* 740 S.E.2d at 929; *Washburn,* 190 N.C.App. at 325, 660 S.E.2d at 584–85.

Finally, in urging this court to enforce the non-competition provision, Dzeel cites the doctrine of freedom of contract and laments the costs that it incurred in recruiting, training, and orienting its former employees and the perceived unfairness in Worldwide Travel Staffing's ability to hire the former employees, avoid these costs, and then place the employees in NCDHHS facilities. In support, Dzeel cites *Sonotone Corporation v. Baldwin,* 227 N.C. 387, 42 S.E.2d 352 (1947). In *Sonotone Corporation,* Chief Justice Stacy wrote for a unanimous court and affirmed the enforcement of a covenant not to compete. In doing so, Chief Justice Stacy noted that "[f]reedom to contract imports risks as well as rights." *Id.* at 390, 42 S.E.2d at 354. When an employer drafts an enforceable covenant not to compete, North Carolina courts will

enforce it and thereby prevent an employee from "undertaking to change horses for what the [employee] regards a better mount." *Id.* at 391, 42 S.E.2d at 355. Concomitantly, however, where an employer drafts an unenforceable covenant, it runs the risk that its employees will be able to change horses "midstream" with impunity for a better mount.

Here, the principle of freedom of contract dooms Dzeel's argument. Dzeel could have drafted an enforceable covenant not to compete and included such a clause in its contracts with its nurses. It did not. Alternatively, Dzeel could have drafted an enforceable liquidated damages clause and included such a clause in its contracts with its nurses. *See E. Carolina Internal Med., P.A. v. Faidas,* 149 N.C.App. 940, 944–47, 564 S.E.2d 53, 55–57, *aff'd,* 356 N.C. 607, 572 S.E.2d 780 (2002). It did not. Accordingly, North Carolina law permits Worldwide Travel Staffing to provide Dzeel's former employees a better mount.

## II.

In sum, Worldwide Travel Staffing's motion for summary judgment [D.E. 20] is GRANTED. The clerk shall close the case.