e-nTech Indep. Testing Servs., Inc. v. Air Masters, Inc., 2017 NCBC 2.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 3092

E-NTECH INDEPENDENT
TESTING SERVICES, INC.

        Plaintiff,

v.

AIR MASTERS, INC., JOSH WHITE,
and MATTHEW KENDLE,

        Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS**

1.    **THIS MATTER** is before the Court upon Defendants Air Masters, Inc. ("Air Masters"), Josh White ("White"), and Matthew Kendle's ("Kendle") (collectively, "Defendants") Motion to Dismiss Plaintiff's Verified First Amended Complaint (the "Motion") in the above-captioned case.

2.    The Court, having considered the Motion, briefs in support of and in opposition to the Motion, and arguments of counsel made at the hearing on the Motion, hereby **DENIES** the Motion.

> *Bell, Davis & Pitt, P.A., by Charlot F. Wood and Bradley C. Friesen, for Plaintiff e-nTech Independent Testing Services, Inc.*
>
> *Womble Carlyle Sandridge & Rice, LLP, by Brent F. Powell and Ryan H. Niland, for Defendants Air Masters, Inc., Josh White, and Matthew Kendle.*

Bledsoe, Judge.

I.

PROCEDURAL HISTORY

3.    Plaintiff e-nTech Independent Testing Services, Inc. ("e-nTech" or "Plaintiff") filed this action on May 25, 2016. On August 17, 2016, Plaintiff filed its

Verified First Amended Complaint ("Amended Complaint"), which asserts claims for tortious interference with business relations, misappropriation of trade secrets, and unfair trade practices under N.C. Gen. Stat. § 75-1.1, and seeks injunctive relief, all arising out of White's and Kendle's termination of their employment with Plaintiff and entry into competition against Plaintiff through their new company, Air Masters.

4. Defendants subsequently filed this Motion to Dismiss on September 16, 2016. The Motion has been fully briefed, and the Court held a hearing on the Motion on November 2, 2016, at which all parties were represented by counsel. The Motion is now ripe for resolution.

## II.

## FACTUAL BACKGROUND

5. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those allegations in the Amended Complaint that are relevant and necessary to the Court's determination of the Motion.

6. Plaintiff e-nTech is a North Carolina corporation that is engaged in the business of providing HVAC independent testing services, including critical room pressurization verification testing, fire damper testing, and other test and balance services for hospitals and other facilities throughout North Carolina, South Carolina, and Virginia.[1] (Am. Compl. ¶¶ 1, 7.)

---

[1] Critical room pressurized verification involves testing the air pressure in rooms in which constant air pressure must be maintained, such as operating rooms, isolation rooms, bronchoscopy and endoscopy labs, catheterization labs, and sterile storage rooms. (Am. Compl. ¶ 9.) Fire damper testing is required for new construction, renovations, hospitals, and certain medical facilities. (Am. Compl. ¶ 8.)

7.     Buddy W. Sechrist ("Sechrist") served as the President of e-nTech at all times relevant to this dispute. (Am. Compl. ¶ 6.) Until May 22, 2015, Sechrist and Andrew Adams were shareholders of e-nTech, and after May 22, 2015, Sechrist was the sole shareholder of the company. (Am. Compl. ¶¶ 6, 18.) Until his resignation in the spring of 2015, Adams was employed as e-nTech's Vice President. (Am. Compl. ¶¶ 18, 38.)

8.     Defendants White and Kendle were employed by e-nTech as technicians. (Am. Compl. ¶¶ 10–11.) White was employed from October 24, 2011 to September 25, 2015, and Kendle was employed from August 4, 2003 to September 23, 2015. (Am. Compl. ¶¶ 10–11.)

9.     Plaintiff alleges that, as employees of e-nTech, White and Kendle had access to allegedly confidential and proprietary information, including information about customers and potential customers, scope of work to be performed for customers, and specifications provided by customers of e-nTech ("Accessible C&P Information"). (Am. Compl. ¶ 13.)

10.    Plaintiff further alleges that White and Kendle did not have access to certain other information e-nTech claims constitutes its trade secrets, including e-nTech's customer lists, information about customer contacts for those with financial and project approval authority, and pricing methodology ("Inaccessible C&P Information"). (Am. Compl. ¶ 14.) Plaintiff contends that during the time White and Kendle were employed by e-nTech, the Inaccessible C&P Information was only accessible to Sechrist, Adams, and e-nTech's office manager. (Am. Compl. ¶¶ 6, 14.)

The Inaccessible C&P Information was on Sechrist's computer and kept in hardcopy form in Sechrist's locked office but not on e-nTech's server. (Am. Compl. ¶¶ 14, 54.)

11. Wayne Memorial Hospital in Goldsboro, North Carolina ("Wayne Memorial") was one of e-nTech's primary customers for its HVAC independent testing services beginning in 2005. (Am. Compl. ¶ 17.) In particular, Wayne Memorial had used e-nTech's fire damper testing services from time to time during this period. (Am. Compl. ¶ 17.)

12. In the spring of 2015, Adams resigned from his employment with e-nTech to become the Director of New Construction and Renovation for Wayne Memorial, effective on or about May 3, 2015. (Am. Compl. ¶ 18.)

13. On May 20, 2015, White filed Articles of Incorporation for Air Masters with the North Carolina Secretary of State and listed the company's address as Kendle's home address. (Am. Compl. ¶ 28.)

14. On June 1, 2015, and consistent with e-nTech's past practices in its business dealings with Wayne Memorial, e-nTech's CEO, Sechrist, met with employees of Wayne Memorial, including former e-nTech employee Adams, Archie Mooring ("Mooring"), and Steve Herring ("Herring"), to discuss upcoming projects for e-nTech at Wayne Memorial. (Am. Compl. ¶ 19). These discussions covered, among other work, a comprehensive fire damper testing project. (Am. Compl. ¶ 19.) During these discussions, Adams requested that e-nTech assign White as technician for the projects. (Am. Compl. ¶ 19.) Wayne Memorial also requested, as it had in the past, that e-nTech submit its proposed budget for the fire damper testing project, so that

Wayne Memorial could schedule the project for completion by the end of 2015. (Am. Compl. ¶ 19.) e-nTech complied on or about June 5, 2015. (Am. Compl. ¶ 20.) Plaintiff contends that in its usual course of dealing with Wayne Memorial, Wayne Memorial always issued a schedule for the work to be performed sometime after e-nTech submitted its proposed budget. (Am. Compl. ¶ 38.)

15. Plaintiff alleges, however, that beginning as early as August 1, 2015 and while still employed at e-nTech, White and Kendle, acting as Air Masters, performed fire damper testing services for Wayne Memorial on multiple projects. (Am. Compl. ¶¶ 34, 36.) Plaintiff further alleges that White and Kendle used e-nTech's equipment, report forms, and proprietary information, as well as the services of a current e-nTech employee, in providing services to Wayne Memorial without the express or implied consent or authority of e-nTech. (Am. Compl. ¶¶ 40–41, 43–44.) In particular, Plaintiff contends that White and Kendle misappropriated e-nTech's Accessible C&P Information by copying or recording it from e-nTech's computer system and hard files and e-nTech's Inaccessible C&P Information by securing it from an employee who had access to the information but was not authorized to disclose it. (Am. Compl. ¶¶ 57–58.)

16. Kendle resigned from e-nTech on September 21, 2015. (Am. Compl. ¶ 21.) White resigned on September 22, 2015. (Am. Compl. ¶22.) Kendle and White refused e-nTech's request to work a notice period. (Am. Compl. ¶¶ 21–24.) Several weeks later, on October 29, 2015, e-nTech contends that Sechrist contacted Mooring, the Mechanical Supervisor for Wayne Memorial, to schedule a semi-annual critical room

pressurization verification test, consistent with the parties' past practice. (Am. Compl. ¶ 25.) Mooring informed Sechrist that Wayne Memorial had "already tested our CRPVs with AirMasters" and that Wayne Memorial had "decided to use Air Masters for our testing in the future." (Am. Compl. ¶ 25.) Sechrist promptly investigated and, according to Plaintiff, learned from Adams that Kendle and White had solicited Wayne Memorial's business for Air Masters and submitted proposals to Wayne Memorial while they were still employed by e-nTech. (Am. Compl. ¶¶ 32–33.)

17.    Plaintiff alleges that Defendants have used, and continue to use, e-nTech's proprietary and trade secret materials and information to perform work for other customers of Air Masters. (Am. Compl. ¶ 45.)

III.

LEGAL STANDARD

18.    In ruling on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the complaint liberally in favor of the plaintiff. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

19.    Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when

some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

20. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005); *see also McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013). The Court may also reject allegations "that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862.

IV.

ANALYSIS

A. Misappropriation of Trade Secrets

21. To state a claim for misappropriation of trade secrets, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *VisionAir, Inc. v. James*, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 364 (2004) (citation omitted). This necessitates that plaintiff also "allege the acts by which the alleged misappropriation

occurred." *Bldg. Ctr., Inc. v. Carter Lumber, Inc.,* 2016 NCBC LEXIS 79, at *15 (N.C. Super. Ct. Oct. 21, 2016) (citing *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 326, 660 S.E.2d 577, 586 (2008)); *see also Veer Right Mgmt. Group, Inc. v. Czarnowski Display Serv.*, 2015 NCBC LEXIS 13, at *15 (N.C. Super. Ct. Feb. 4, 2015). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is 'insufficient to state a claim for misappropriation of trade secrets.'" *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 585–86 (citation omitted) (affirming dismissal of misappropriation of trade secrets counterclaims where the "allegations do not identify with sufficient specificity either the trade secrets Plaintiffs allegedly misappropriated or the acts by which the alleged misappropriations were accomplished").

22. North Carolina's Trade Secret Protection Act defines a trade secret as:

> business or technical information . . . that: (a) [d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152 (3). Misappropriation is defined as "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152 (1).

23. Additionally, a plaintiff must show that a defendant "(1) [k]nows or should have known of the trade secret; and (2) [h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155.

24. Defendants argue that the Amended Complaint fails to identify with particularity the alleged trade secrets that have been misappropriated, fails to identify any information that qualifies as a trade secret, and fails to identify with particularity how the alleged misappropriation occurred. (Defs.' Br. Supp. Mot. Dismiss 4–10.)

25. The Court thus turns to an examination of the allegations of the Amended Complaint. Significantly for present purposes, Plaintiff alleges that "[t]he proprietary information of Plaintiff, and the confidential information contained therein, contain trade secrets, including but not necessarily limited to information about customers and potential customers, customer lists, information about customer contacts for those with financial and project approval authority, scope of work to be performed for customers, specifications provided by customers to e-nTech, and Plaintiff's pricing methodology." (Am. Compl. ¶ 52.) Plaintiff further avers that the alleged trade secrets of e-nTech, "including information about customers and potential customers, scope of work to be performed for customers, and specifications provided by customers of e-nTech" were "cop[ied] or record[ed] . . . from e-nTech's computer system and hard files" by Defendants. (Am. Compl. ¶¶ 13, 57.) Plaintiff also alleges that Defendants obtained e-nTech's "customer lists, information about

customer contacts for those with financial and project approval authority, and pricing methodology" from "an employee who had access to the information but was not authorized to disclose it" and "copied, recorded, or took [them]" when "only Mr. Sechrist, Andrew Adams . . . , and e-nTech's office manager" had access to that information. (Am. Compl. ¶¶ 14, 58.)

26. In the context of a motion to dismiss, Plaintiff's Amended Complaint need only "enable a defendant to delineate that which he is accused of misappropriating" and "a court to determine whether misappropriation has . . . occur[red]." *VisionAir, Inc.*, 167 N.C. App. at 510–11, 606 S.E.2d at 364. The Court concludes that the Amended Complaint satisfies that standard here.

27. Viewing the allegations in the light most favorable to Plaintiff, and recognizing that a different standard will apply when Plaintiff's proof is challenged under Rule 56, Plaintiff's alleged trade secrets—"customer lists, information about customer contacts for those with financial and project approval authority, and pricing methodology" as well as the "scope of work to be performed for customers," and the "specifications provided by customers to e-nTech"—are generally consistent with trade secret allegations this Court has held sufficient to survive a motion to dismiss. *See, e.g.*, *GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 234, 752 S.E.2d 634, 649 (2013) ("pricing information, customer proposals, historical costs, and sales data"); *Bldg. Ctr., Inc.*, 2016 NCBC LEXIS 79, at *10 ("names and contacts of customers; customer preferences, including the needs, requirements, and values of [Plaintiff's] customers; sales and marketing strategies; pricing structures; margins and profits;

manufacturing technologies; and other confidential business information"); *LeBleu Corp. v. B. Kelley Enters.*, 2014 NCBC LEXIS 66, at \*12 (N.C. Super. Ct. Dec. 9, 2014) ("customer lists, pricing information, transaction histories, key contacts, and customer leads"); *S. Fastening Sys. v. Grabber Constr. Prods.*, 2015 NCBC LEXIS 42, at \*11 (N.C. Super. Ct. Apr. 28, 2015) ("confidential customer information such as customer contact information and customer buying preferences and history . . . confidential freight information, sales reports, prices and terms books, sales memos, sales training manuals, commission reports, and information concerning [plaintiff's] relationship with its vendors"); *see also Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 375, 542 S.E.2d 689, 692 (2001) ("Confidential data regarding operating and pricing policies can also qualify as trade secrets."); *Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 2002 NCBC LEXIS 2 at \*41–42 (N.C. Super. Ct. July 10, 2002) ("Business plans, marketing strategies, and customer information represent the type of information that, when accumulated over time, can be extremely valuable to competitors [and can qualify as trade secrets].")

28. Moreover, the Court concludes that Plaintiff's allegations of how the alleged misappropriation occurred—that Plaintiff's Accessible C&P Information was "cop[ied] or record[ed] . . . from e-nTech's computer system and hard files" by Defendants and that Plaintiff's Inaccessible C&P Information was obtained from one of three specific employees "who had access to the information but was not authorized to disclose it"—is sufficient at the Rule 12(b)(6) stage. (Am. Compl. ¶¶ 13, 57.) *See Bldg. Ctr., Inc.,* 2016 NCBC LEXIS 79, at \*11, 15–16 (finding allegations that

defendant took the trade secrets "in physical and/or electrical form" and "hired Hurd[, a current employee,] to acquire Plaintiff's Trade Secrets" sufficient to survive Rule 12(b)(6) motion); *see also River's Edge Pharms., LLC v. Gorbec Pharm. Servs.*, No. 1:10CV991, 2012 U.S. Dist. LEXIS 57969, at *43–44 (M.D.N.C. Apr. 25, 2012) (concluding plaintiff sufficiently alleged misappropriation under North Carolina law to survive motion to dismiss).

29. Accordingly, the Court concludes that Defendants' Motion to Dismiss Plaintiff's claim for misappropriation of trade secrets should be denied.

B. <u>Tortious Interference with Business Relations</u>

30. A claim for tortious interference with "business relations" embraces claims for interference with both existing contracts and prospective future contracts. *See Sunbelt Rentals, Inc.*, 2002 NCBC LEXIS 2, at *29. Of particular relevance here, a claim for tortious interference with existing contracts requires the plaintiff to allege that "a valid contract existed between plaintiff and a third person" who was induced by defendant not to perform without justification. *See, e.g., United Labs., Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988); *Beck v. City of Durham*, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002). In contrast, a claim for tortious interference with future contracts or prospective economic advantage requires the plaintiff to allege that "defendants acted without justification in 'inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference.'" *Walker v. Sloan*, 137 N.C. App. 387, 393, 592 S.E.2d 236, 242 (2000) (citation omitted).

31.   For both claims, if a defendant's interference was justified or privileged, a motion to dismiss should be granted. *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 220, 367 S.E.2d 647, 650 (1988); *see Childress v. Abeles*, 240 N.C. 667, 674–75, 84 S.E.2d 176, 181–82 (1954). In particular, "competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interest and by means that are lawful." *Peoples Sec. Life Ins. Co.*, 322 N.C. at 221, 367 S.E.2d at 650; *S. Fastening Sys.*, 2015 NCBC LEXIS 42, at *21–22.

32.   Defendants allege that Plaintiffs claim for tortious interference with business relations must fail for two reasons: (1) the allegations are insufficient to establish either the existence of a current contract or that a prospective contract with Wayne Memorial would have occurred but for Defendants' conduct, and (2) Defendants were justified in their actions by acting for "their own financial gain" and competing with Plaintiff. (Defs.' Br. Supp. Mot. Dismiss 11–12.) The Court disagrees.

33.   As an initial matter, Plaintiff has neither alleged nor argued that the Amended Complaint contains allegations establishing the existence of a current contract; thus, Defendants are correct that to the extent that Plaintiff's claim is one for tortious interference with contract, Plaintiff's claim must be dismissed.

34.   The Court, however, does not read Plaintiff's tortious interference claim as a claim for tortious interference with contract but rather as one for tortious interference with prospective economic advantage. The Amended Complaint contains allegations that Plaintiff had regularly "been providing HVAC Independent

Testing services . . . to Wayne Memorial since 2005," that Plaintiff "was the only company providing those services," and that Plaintiff had "performed Fire Damper Testing as part of this work." (Am. Compl. ¶ 17.) Plaintiff further alleges that Plaintiff and Wayne Memorial had developed a course of dealing over their 10-year relationship, that Plaintiff's dealings with Wayne Memorial in 2015 were consistent with this course of dealing, and that but for Defendants' proposal to perform fire damper testing for Wayne Memorial—a proposal prepared and submitted using Plaintiff's confidential information while White and Kendle were still employed by e-nTech—Plaintiff would have provided comprehensive fire damper testing services to Wayne Memorial in 2015 and thereafter. (Am. Compl. ¶¶ 19–38.)

35. Because Plaintiffs have alleged circumstances sufficient to support a reasonable inference that Plaintiff would have contracted with Wayne Memorial for future fire damper testing and other services but for Defendants' alleged misconduct, the Court concludes that Plaintiff has stated a cognizable claim for tortious interference with prospective economic advantage and that Defendants' first purported basis for dismissal must therefore fail.

36. Defendants' second ground for dismissal fares no better. The same allegations of wrongful conduct that permit Plaintiff's claim for misappropriation of trade secrets to survive Defendants' Motion are likewise sufficient to show that Defendants' competition was not through lawful means. *See, e.g., S. Fastening Sys.,* 2015 NCBC LEXIS 42, at *23–24 (declining to dismiss tortious inference with contract claim "where Complaint alleged [defendants] acquired, disclosed and used

[plaintiff's] confidential and trade secret information . . ." which constitutes "a 'wrongful purpose' and . . . [was] without legal justification"). Accordingly, Defendants' alternative basis for dismissal likewise must fail.

C. Unfair and Deceptive Trade Practices

37. To successfully state a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, a plaintiff must allege "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 593, 619 S.E.2d 577, 582 (2005) (citing *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991)).

38. The North Carolina appellate courts have held that "[a] violation of the Trade Secrets Protection Act constitutes an unfair act or practice under N.C. Gen. Stat. § 75-1.1." *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 659, 670 S.E.2d 321, 329 (2009); *see also GE Betz, Inc.*, 231 N.C. App. at 236, 752 S.E.2d at 651. Accordingly, because Plaintiff's unfair trade practice claim is based on Defendants' alleged misappropriation of trade secrets, the Court concludes that Plaintiff's claim under Chapter 75, like Plaintiff's trade secret claim under Chapter 66, should not be dismissed at this stage of these proceedings. *See, e.g., Bldg. Ctr. Inc.*, 2016 NCBC LEXIS 79, at *30 ("Having found that Plaintiff's misappropriation . . . claim[] should survive [dismissal under Rule 12(b)(6)], the Court believes Plaintiff has alleged sufficient facts for the UDTP claim to survive [dismissal under Rule 12(b)(6)] as well."); *Artistic S. Inc. v. Lund,* 2015 NCBC LEXIS 113, at

*40–41 (N.C. Super. Ct. Dec. 9, 2015) ("Because the Court concludes that Plaintiff has stated a valid claim for misappropriation of trade secrets against [defendant], Plaintiff's Section 75-1.1 claim against [defendant] based on this same conduct must also survive [dismissal under Rule 12(c)]."); *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *64–65 (N.C. Super. Ct. Nov. 3, 2011) (to similar effect).

## V.

## CONCLUSION

39. Based on the foregoing, the Court hereby **DENIES** Defendants' Motion to Dismiss Plaintiff's Verified First Amended Complaint.

**SO ORDERED**, this the 5th day of January, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases