GLOBAL NAPS NORTH CAROLINA, INC., Global Naps Georgia, Inc., and Global Naps South, Inc., Plaintiffs,

v.

BELLSOUTH TELECOMMUNICATIONS, INC., Defendant.

No. 5:04–CV–96–BO(1).

United States District Court, E.D. North Carolina, Western Division.

Sept. 27, 2006.

Cathleen M. Plaut, Bailey & Dixon, LLP, Gavin Bryce Parsons, Troutman Sanders LLP, Raleigh, for Global Naps North Carolina, Inc., Global Naps Georgia, Inc., Global Naps South, Inc., Plaintiffs.

Fred M. Wood, Jr., Nelson Mullins Riley & Scarborough, LLP, Christopher M. Olds, Nelson Mullins Riley & Scarborough, LLP, Charlotte, for Bellsouth Telecommunications, Inc., Defendant.

## ORDER

BOYLE, District Judge.

This matter is before the Court on Plaintiff's Motion for Primary Jurisdiction Stay, pursuant to Rule 7 of the Federal Rules of Civil Procedure and Local Rule 7.1. For the reasons explained below, Plaintiff's Motion is DENIED.

## BACKGROUND

Defendant BellSouth Telecommunications, Inc. ("BellSouth") is the incumbent local exchange carrier ("ILEC"), providing services as the existing dominant telephone company. Plaintiffs, Global NAPS North Carolina, Inc., Global NAPS Georgia, Inc., and Global NAPS South, Inc. (Collectively "Global"), are competitive local exchange carriers ("CLECs") that provide wholesale services to Internet Services Providers ("ISPs") collocated in its facilities, who, in turn, provide service to BellSouth customers in North Carolina, Florida and Georgia. In order to prevent a monopolized market, the Telecommunications Act of 1996, 47 U.S.C. § 251, et. seq., rewrote the law governing telecommunications. The legislation was aimed at eliminating roadblocks for local telephone company competition creating consumer choice. To do so, Congress required that a CLEC must be permitted to interconnect its network "at any technically feasible point within the [incumbent] carrier's network." 47 U.S.C. § 251(c)(2)(B). Global and BellSouth are parties to interconnection agreements in Florida, Georgia and North Carolina.

After a dispute over interconnection rates, BellSouth indicated that it would terminate services to Global. On February 13, 2004, Global filed their complaint for declaratory judgment and motion for preliminary injunction. This motion was withdrawn upon agreement that BellSouth would not terminate services pending resolution of the case. Global now seeks a stay for primary jurisdiction of the Federal Communications Commission on the pending issues in the case.

## ANALYSIS

The doctrine of primary jurisdiction is "specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Primary jurisdiction "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Id.* No fixed formula exists for the application of the doctrine of primary jurisdiction to the facts of a particular case. *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Though not an exhaustive list, four factors may be considered in deciding whether to stay the district court's jurisdiction in favor of the jurisdiction of an administrative agency: (1) whether the question at issue is within the conventional experience of judges or it is within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *Nat'l Comm. Ass'n, Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 222 (2d Cir.1995).

Plaintiff argues that the doctrine of primary jurisdiction warrants a stay in this matter primarily because the status of Voice over Internet Protocol ("VoIP") demands FCC interpretation before this matter can proceed. VoIP is a technology that enables customers to use the internet as the transmission medium for voice telephone calls by sending voice data in packets, using IP format rater than traditional circuits. Defendants argue that this case has nothing to do with VoIP, and centers instead on Internet Service Provider ("ISP") traffic. To simplify the differences, VoIP users make a telephone call using IP technology, while ISP users access the internet using conventional telephone technology.

▮ The first factor to be considered is whether this matter is within the conventional experience of judges. The central issue in this case concerns billing under the interconnection agreements between Global and BellSouth. Contract disputes are certainly within the conventional experience of judges. In addition, federal courts have found themselves capable of resolving similar disputes, without the intervention of the FCC. *See, e.g., Southern New England Tel. Co. v. Global Naps, Inc.,* No. 3:04–CV–2075, 2005 WL 2789323 (D.Conn. Oct. 26, 2005) (denying Global Naps' motion to dismiss for primary jurisdiction because their complaint did not plead that the traffic at issue was VoIP or IP enhanced calls). *See also Global Naps, Inc. v. Mass. Dept. Of Telecomm. & Energy,* 427 F.3d 34 (1st Cir.2005) (approving jurisdiction of federal court to interpret interconnection agreement); *Verizon Md. Inc. v. Global Naps, Inc.,* 377 F.3d 355 (4th Cir.2004) (deeming district court jurisdiction appropriate for contract misinterpre-

tation claim relating to an interconnection agreement). As these cases demonstrate, the central issue is within the experience of judges and does not warrant referral to the FCC.

Second, the issue in this case is not within the agency's discretion. Global, the moving party, sought jurisdiction in the federal courts and now argues jurisdiction before the FCC is more appropriate.[1] Global makes no reference to VoIP in their complaint or any motion predating the motion currently before the Court. Nor does BellSouth make any reference to VoIP in their crossclaims. Further, Global states that "virtually all of the traffic that Global exchanges with BellSouth is Internet traffic, *i.e.,* Internet service provider-bound 'information access services.'" Complaint, ¶ 19; Motion for Preliminary Injunction, ¶ 2. Global provides no proof that the traffic at issue consists of VoIP. Indeed, Global asks the Court for interpretation of the 2001 ISP Remand Order, issued by the FCC, which also makes no mention of VoIP technology. *In the Matter of Implementation of Local Competition Provision in the Telecomm. Act of 1996: Intercarrier for ISP–Bound Traffic,* Order on Remand Report and Order, 16 F.C.C.R. 9151 (2001). Because VoIP is not immediately at issue in this case, the Court cannot conclude that the dispute is within the discretion of the FCC. Third, there is no danger of inconsistent rulings as the issue of VoIP, is not applicable in this case. At this stage of the proceedings, VoIP technology is irrelevant to the dispute between the parties, and will not produce inconsistent rulings. Finally, no prior application to the agency has been made by BellSouth or Global.

---

1. Global also argues that the Defendant consented to primary jurisdiction before the FCC by raising it as a defense in their answer and counterclaims. This defense has been removed from the amended answer and counterclaim, and this argument is moot.

450

The administration of justice warrants against referral. None of the factors discussed above weighs in favor of staying the present action. Furthermore, pursuant to an informal agreement to withdraw a motion for a temporary injunction, BellSouth continues to provide services to Global, while the usage rates remain in dispute. Staying this action would perhaps continue delays in this case, while Global continues to receive services from BellSouth at a disputed rate.

For the reasons stated above, Plaintiff's Motion for Primary Jurisdiction Stay is DENIED.