Inhold, LLC v. PureShield, Inc., 2020 NCBC 66.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

INHOLD, LLC; and NOVALENT, LTD.,

Plaintiffs,

v.

PURESHIELD, INC.; JOSEPH RAICH; and VIACLEAN TECHNOLOGIES, LLC,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 4841

**ORDER AND OPINION ON DEFENDANTS' MOTION TO DISMISS COUNTS I–V OR, ALTERNATIVELY, TO STAY THE CASE**

1. Plaintiffs Inhold, LLC and Novalent, Ltd. are related companies that make and sell products designed to inhibit the growth of bacteria and fungi. They claim to own valuable trade secrets. In this action, Plaintiffs allege that a disgruntled insider, Joseph Raich, stole their trade secrets and other confidential information, concealed his misdeeds, and began making identical competing products. Plaintiffs have sued Raich, PureShield, Inc., and ViaClean Technologies, LLC ("Defendants") for misappropriation of trade secrets and other wrongs.

2. Defendants deny the allegations. They have moved to dismiss most but not all asserted claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Alternatively, they seek to stay the entire case pending resolution of a related administrative proceeding. (ECF No. 21.) For the following reasons, the Court **DENIES** the motion.

*Tuggle Duggins P.A., by Jeffrey S. Southerland, Brandy L. Mansouraty, and Richard W. Andrews, for Plaintiffs Inhold, LLC and Novalent, Ltd.*

*Parker Poe Adams & Bernstein LLP, by Sarah F. Hutchins, C. Kyle Musgrove, and Katherine S. Clarke, for Defendants PureShield, Inc., Joseph Raich, and ViaClean Technologies, LLC.*

Conrad, Judge.

## I.
## BACKGROUND

3. The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations of the complaint are true.

4. Novalent manufactures antimicrobial protectant products—more specifically, "sustainable, non-leaching antimicrobial surface and textile technologies." (Am. Compl. ¶ 26, ECF No. 16.) Inhold is wholly owned by Novalent and was formed to hold some of its intellectual property. (*See* Am. Compl. ¶¶ 18, 24, 28, 60.) For simplicity's sake, the Court will refer to Plaintiffs collectively unless the specific identity of Inhold or Novalent is directly relevant.

5. This case concerns Plaintiffs' Envirosystems Bioshield and Envirosystems Proshield product lines. As alleged, Plaintiffs own trade secrets covering the makeup and processes for manufacturing these products, including statements of formula, data compilations and ratios, processes and methods for synthesizing and stabilizing organo-silane molecules, and studies on the products' composition, ingredients, effectiveness, and safety. (*See* Am. Compl. ¶¶ 19, 20.)

6. Antimicrobial products and other pesticides are highly regulated. The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") requires companies in this field to register their products with the Environmental Protection Agency ("EPA") before marketing them. *See* 7 U.S.C. § 136a. The EPA aims to ensure that

pesticides and similar products will perform as intended without harming the environment. *See id.* § 136a(c)(5). It is a data-driven review process. For the products at issue, Plaintiffs' registration applications included the studies discussed above and "other trade secrets," which Plaintiffs allege were "to be held in strictest confidence by the EPA." (Am. Compl. ¶ 23.) The EPA granted four requested registrations, allowing Plaintiffs to "apply the products to specified applications and to market and label [the] products as approved for use for such applications." (Am. Compl. ¶¶ 21, 22.)

7. This case arises out of events that began as early as 2008. At that time, Raich was a member of Inhold. (*See* Am. Compl. ¶ 29.) He proposed licensing Inhold's intellectual property to his new business venture, PureShield. (*See* Am. Compl. ¶¶ 33, 39.) One of Inhold's other members blocked the proposal, so Raich took the matter to arbitration, which he lost. (*See* Am. Compl. ¶¶ 33–37.) According to Plaintiffs, that didn't stop Raich. Stymied in his attempt to license the trade secrets, Raich stole them instead. (*See, e.g.*, Am. Compl. ¶¶ 42, 43, 51, 97, 122.) PureShield then began making and selling a product line, called Bio-Protect, that is predicated on the stolen trade secrets. (*See* Am. Compl. ¶¶ 12, 43, 44, 51, 121.)

8. PureShield also took a shortcut to register its products with the EPA. (*See* Am. Compl. ¶¶ 45, 46, 48–50.) Rather than submit its own product studies and related data, PureShield told the EPA that it had permission to cite Inhold's studies already on file. (*See* Am. Compl. ¶¶ 48, 51, 52.) Using Inhold's letterhead, Raich—without authorization—signed the letter that purported to give Inhold's blessing.

(Am. Compl. ¶¶ 45, 47; Ex. A, ECF No. 16.1.) The EPA granted PureShield's applications in 2010 and 2011. (*See* Am. Compl. ¶ 48.)

9. Throughout, Plaintiffs remained in the dark. In 2014, Plaintiffs licensed four patents to PureShield and agreed to make it a distributor for the Bioshield product line. (*See* Am. Compl. ¶¶ 57, 61, 62.) Plaintiffs describe both arrangements as ploys designed "to cleanse or conceal" Defendants' earlier misappropriation. (Am. Compl. ¶¶ 54, 58, 59, 65–67.)

10. It was not until 2018 that Plaintiffs became suspicious. At a business meeting with Novalent's CEO, representatives from PureShield claimed to have rights to products identical to Plaintiffs'. (*See* Am. Compl. ¶ 69.) Plaintiffs began investigating, starting with a Freedom of Information Act request to the EPA. (*See* Am. Compl. ¶¶ 70, 71.) They discovered documents indicating that PureShield's "formula and label claims are identical" to those of Plaintiffs, that PureShield was "relying upon the product chemistry originally submitted" by Plaintiffs, and that PureShield's products were "identical" to Plaintiffs' products. (Am. Compl. ¶ 46, 71; Ex. C, ECF No. 16.3.)

11. Plaintiffs allege that they confronted Raich and PureShield to no effect. (*See* Am. Compl. ¶¶ 74, 75.) Indeed, rather than back down, Raich and PureShield recruited ViaClean Technologies to join their conspiracy. (*See* Am. Compl. ¶¶ 75, 82.) Once a distributor of Plaintiffs' products, ViaClean Technologies now allegedly makes its own identical products using the trade secrets and other information taken by Raich. (*See* Am. Compl. ¶¶ 91, 92.)

12. Plaintiffs filed this suit in May 2020 and amended their complaint shortly after. The amended complaint asserts five claims for relief based on the misuse of trade secrets and confidential information: breach of fiduciary duty, constructive fraud, misappropriation of trade secrets, unfair or deceptive trade practices, and civil conspiracy. A sixth claim, not relevant here, is for breach of contract against ViaClean Technologies based on an unpaid invoice. In a separate proceeding, Plaintiffs have also petitioned the EPA to revoke PureShield's product registrations. (*See* Br. in Supp. 19, ECF No. 22; Opp'n 20, ECF No. 30.)

13. Defendants move to dismiss all but the claim for breach of contract. Alternatively, they seek to stay the entire case pending resolution of the EPA proceeding. This matter has been fully briefed, and the Court held a hearing on September 15, 2020.

## II.
## MOTION TO DISMISS

14. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and

permissible inferences "in the light most favorable to" the nonmoving party. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332, 828 S.E.2d 467, 471 (2019) (citation and quotation marks omitted). The Court may consider documents "attached to and incorporated within [the] complaint" but may not consider matters outside the complaint. *Bucci v. Burns*, 2018 NCBC LEXIS 37, at *7–8 (N.C. Super. Ct. Apr. 25, 2018) (citation and quotation marks omitted).

A. Misappropriation of Trade Secrets

15. Defendants argue, first, that the amended complaint does not allege the existence or misappropriation of a trade secret. (*See* Br. in Supp. 11–14.) On that basis, they move to dismiss the trade-secret claim. They also seek to dismiss the claims for breach of fiduciary duty, constructive fraud, civil conspiracy, and unfair or deceptive trade practices, contending that those claims are "rooted in" the alleged misappropriation of trade secrets. (Br. in Supp. 14.)

16. "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec v. Manly*, 370 N.C. 602, 609, 811 S.E.2d 542, 547–48 (2018) (quoting *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008)). By statute, a trade secret means "business or technical information" that "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from

its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C.G.S. § 66-152(3).

17.   Here, Plaintiffs claim trade-secret protection for formulas, methods, and compilations of data related to their Proshield and Bioshield antimicrobial protectant products. (*See* Am. Compl. ¶¶ 18, 21.) The alleged trade secrets include

> confidential statements of formula; compilation data; data matrices; ratios of ingredients; processes, methods and methodology for synthesizing raw materials to create a stable organo-silane molecule; and processes, methods and methodology for stabilizing an organo-silane molecule in water, maintaining clarity and antimicrobial properties . . . .

(Am. Compl. ¶ 19.) Plaintiffs also allege that the trade secrets include studies that relate to "the products' compositions and ingredients; stabilization; manufacturing processes; effectiveness; and safety, including dermal, oral, acute inhalation and other toxicities and dermal and other irritations." (Am. Compl. ¶ 20.)

18.   These allegations adequately identify the trade secrets at the pleading stage. The descriptions are reasonably definite without disclosing the actual secrets. In addition, the amended complaint gives even more detail by specifying the products that embody the trade secrets, naming Defendants' allegedly infringing products, and listing the titles of the relevant studies as an exhibit. (*See, e.g.*, Am. Compl. ¶¶ 12, 21, 28, 45, 46, 124, 125; Ex. A.) Taken together, these allegations give Defendants and the Court enough notice of the scope of the claim. *See, e.g., Lowder Constr., Inc. v. Phillips*, 2019 NCBC LEXIS 117, at *15–20 (N.C. Super. Ct. Dec. 30, 2019); *Se. Anesthesiology Consultants, PLLC v. Charlotte-Mecklenburg Hosp. Auth.*, 2019 NCBC LEXIS 107, at *11–16 (N.C. Super. Ct. Dec. 13, 2019).

19. Defendants contend that this information, even if identified with sufficient particularity, is not subject to trade-secret protection as a matter of law. Their position is that, when information is submitted to the EPA in an application for product registration, it becomes publicly available. (*See* Br. in Supp. 11–12.) As a result, the registrant "can claim no property interest under state law" for that data. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584–85 (1985). At the hearing, Plaintiffs' counsel conceded that, under *Thomas*, neither the studies in paragraph 20 of the amended complaint nor the EPA registrations in paragraph 21 can constitute trade secrets, thereby abandoning any allegations to the contrary.

20. But that concession, and Defendants' argument, do not require dismissal of any claims. Many of the alleged trade secrets were not submitted to the EPA in Plaintiffs' applications. (*See* Am. Compl. ¶¶ 19, 23.) In addition, to the extent Plaintiffs disclosed any trade secrets in paragraph 19 to the EPA, there are open questions about the effect of that disclosure. Federal law does not make all information submitted to the EPA publicly available. Health and safety data become available to the public, but outside of that, the EPA "shall not make public information which . . . contains or relates to trade secrets." 7 U.S.C. § 136h(b); *see also id.* § 136h(d)(1). Plaintiffs allege that their trade secrets were "to be held in strictest confidence by the EPA." (Am. Compl. ¶ 23.) Defendants have not addressed whether a *confidential* disclosure to the EPA affects trade-secret protection (under *Thomas* or otherwise), which is a determination better suited to a more complete record. *See Se. Anesthesiology Consultants*, 2019 NCBC LEXIS 107, at *14–17

(denying motion for judgment on the pleadings when it was not clear from the complaint whether alleged trade secrets were subject to the Public Records Act).

21. In their reply brief, Defendants argue that the alleged trade secrets are disclosed in Plaintiffs' patents. (*See* Reply Br. 2, ECF No. 32.) But the patents are outside of the complaint, and Defendants have not asked the Court to take judicial notice of them. And in any event, the amended complaint alleges that the patents protect aspects of Plaintiffs' products that are distinct from their trade secrets. (*See* Am. Compl. ¶ 57.) The Court must take that allegation as true.

22. Finally, Defendants contend that the amended complaint does not allege any acts of misappropriation. (*See* Br. in Supp. 13–14.) The Court disagrees. A prima facie case of misappropriation exists when the wrongdoer "(1) [k]nows or should have known of the trade secret; and (2) [h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C.G.S. § 66-155. The amended complaint alleges that Raich had access to the trade secrets due to his position as member and manager of Inhold and that he had a motive to acquire the trade secrets after having been denied a license to use them. (*See* Am. Compl. ¶¶ 33, 37, 122.) The amended complaint further alleges that PureShield represented to the EPA that its products were identical to Inhold's, that Raich and PureShield disclosed the trade secrets to ViaClean Technologies, and that Defendants are using the trade secrets to manufacture their own products. (*See* Am. Compl. ¶¶ 46, 80, 82, 83, 121.) Although

Defendants heatedly deny synthesizing the active ingredients to manufacture their own products, (*see* Reply Br. 1, 3–4), that is an issue for discovery.

23. Viewing the allegations in a light most favorable to Plaintiffs, the Court concludes they have adequately alleged the existence of trade secrets to the extent identified in paragraph 19 of the amended complaint. Likewise, Plaintiffs have adequately alleged misappropriation.

## B. Statute of Limitations

24. Next, Defendants argue that the governing statutes of limitations bar the claims for misappropriation of trade secrets, breach of fiduciary duty, unfair or deceptive trade practices, and conspiracy. (*See* Br. in Supp. 14–18.)

25. A statute of limitations "may be the basis of a 12(b)(6) dismissal if on its face the complaint reveals the claim is barred." *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 442, 444 S.E.2d 423, 426 (1994) (citations omitted). The claims here are subject to the "discovery rule, meaning that accrual of the limitations period does not begin when the defendant's conduct occurred, but when the plaintiff discovered it." *Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 116, at *52 (N.C. Super. Ct. Dec. 31, 2019) (citing *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 386 (2007)).

26. The Court cannot conclude from the face of the amended complaint that any claim is time-barred. Plaintiffs allege that the wrongful acts began as early as 2010 but that Raich and PureShield concealed their wrongdoing. (*See, e.g.*, Am. Compl. ¶¶ 42, 43, 59, 66.) It was not until July 2018 that Plaintiffs learned about

PureShield's allegedly unlawful activities. (*See, e.g.*, Am. Compl. ¶¶ 69–73.) Plaintiffs filed suit less than two years after the alleged discovery, well within the relevant limitations periods. *See, e.g.*, N.C.G.S. § 1-52(1) (three-year limitations period for breach of fiduciary duty); *id.* § 66-157 (three-year limitations period for misappropriation of trade secrets). Taking these allegations as true, the claims are timely. *See Aldridge*, 2019 NCBC LEXIS 116, at *55–57 (denying motion to dismiss claims as time-barred when complaint alleged concealment of wrongdoing).

27. Defendants argue that Plaintiffs should have known of the facts giving rise to their claims no later than 2014 when Inhold and PureShield entered into patent licensing and distributorship agreements. (*See* Br. in Supp. 15.) But what Plaintiffs should have known is a fact-intensive question not suited to a Rule 12(b)(6) motion. As Plaintiffs observe, these agreements appear to have contemplated that PureShield would buy products from Inhold for resale. (*See, e.g.*, Am. Compl. ¶¶ 61, 62; Opp'n 16.) Even if it was implied that PureShield would need to obtain product registrations from the EPA, that did not necessarily put Plaintiffs on notice that Raich and PureShield had already done so, that they had been using the alleged trade secrets to manufacture products for several years, or that they would continue to use the trade secrets to make illicit products (either in addition to or in lieu of purchasing from Plaintiffs). *See Jordan v. Bradsher*, No. COA15-808, 2016 N.C. App. LEXIS 720, at *6–8 (N.C. Ct. App. July 5, 2016); *see also Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 486, 593 S.E.2d 595, 601 (2004) (noting that when a plaintiff

should have discovered alleged wrongdoing is usually a question of fact (citing *Feibus & Co., Inc. v. Godley Constr. Co.*, 301 N.C. 294, 304–05, 271 S.E.2d 385, 392 (1980))).

28. In sum, the amended complaint adequately alleges that the asserted claims are timely. The Court need not address Plaintiffs' alternative arguments, including application of the continuing wrong doctrine.

III.
MOTION TO STAY

29. In the alternative, Defendants ask the Court to stay the case under the doctrine of primary jurisdiction. (*See* Br. in Supp. 18–23.) Plaintiffs have petitioned the EPA to revoke PureShield's registrations for the Bio-Protect products. According to Defendants, the Court should stay this litigation until the EPA renders its decision.

30. The doctrine of primary jurisdiction "guide[s] a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court." *N.C. Chiropractic Ass'n, Inc. v. Aetna Cas. & Sur. Co.*, 89 N.C. App. 1, 8, 365 S.E.2d 312, 316 (1988) (citation, quotation marks, and emphasis omitted). "No fixed formula has been established for determining whether an agency has primary jurisdiction." *Nat'l Commc'ns Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 223 (2d Cir. 1995) (citation omitted).

31. The Court concludes that a stay would not be appropriate. The center of gravity in this case is Defendants' alleged misappropriation of trade secrets and confidential information. Those issues do not touch on matters of agency expertise and are not even at issue in the EPA's revocation proceeding. Indeed, all that the

EPA will decide is whether Defendants complied with its rules and, if not, whether to revoke their product registrations. The risk of inconsistent decisions on that question is neither imminent nor substantial. Certainly, it does not call for a comprehensive and indefinite stay while awaiting the agency's decision. The prompt and fair administration of justice therefore weighs heavily against a stay. *See id.* at 223–25; *Longo v. Trojan Horse Ltd.*, 992 F. Supp. 2d 612, 616–17 (E.D.N.C. 2014); *see also Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–07 (1976); *Glob. Naps N.C., Inc. v. BellSouth Telecomms., Inc.*, 455 F. Supp. 2d 447, 448–50 (E.D.N.C. 2006).

IV.
CONCLUSION

32.    For these reasons, the Court **DENIES** the motion.

**SO ORDERED**, this the 22nd day of September, 2020.

 /s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases